**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PAULA HIAN, PAULA HIAN CREATIONS, LTD** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | **NO.  22-3742** |
| | : | |
| **LOUIS VUITTON USA INC, LOUIS VUITTON MALLETIER, OFF WHITE OPERATING SRL, JOHN AND JANE DOES I-X, ABC CORPORATION I-X** | : | |
| | : | |
| | : | |
| | : | |

## <u>MEMORANDUM</u>

**MURPHY, J.**                                                                    **June 28, 2024**

      In this case, an independent fashion designer accuses a large fashion conglomerate of helping itself to her designs.  The independent designer sent cold solicitations to a top executive at the fashion conglomerate with hopes of a collaboration.  The solicitations included original clothing designs, lookbooks, and other promotional material meant to highlight the designer's international acclaim in the fashion industry.  Ultimately, the fashion conglomerate did not make time to meet with the designer or decide to work with her.  But several years later, she saw marketing campaigns and products by the fashion conglomerate that looked like three of her original designs.  After making demands without success, the designer and her company brought this suit against the fashion conglomerate alleging copyright infringement, Lanham Act and unfair competition violations, and unjust enrichment.

      The fashion conglomerate moves to dismiss each claim as insufficiently stated or preempted.  We agree in large part and dismiss most of the claims, but the copyright claims for one design will proceed into discovery.

I.      **Factual Allegations**[1]

Plaintiff Ms. Paula Hian ("Ms. Hian") is a professional designer of luxury women's clothing.  DI 46 ¶ 17.  She's the president and sole owner of plaintiff Paula Hian Creations, Ltd., ("PHC") a corporation located in King of Prussia, Pennsylvania.[2]  Ms. Hian "envisions, designs, creates, and produces all her original styles" and markets and commercializes them through PHC, which is a "wholesale, retail, and online fashion company that markets and sells [Ms.] Hian's luxury womenswear clothing collection."  *Id.* ¶¶ 20-21.  Ms. Hian's creative process includes "envisioning and sketching her designs . . . testing and deciding among various materials . . . engaging a factory to knit a variety of swatches of her original fabric designs . . . based on [her] specifications and decisions . . . manufacturing her specific original pattern designs . . . fitting manufactured pieces to models  . . . compiling modeled pieces . . . and creating lookbooks for wholesale, retail, and online buyers."  *Id.* ¶ 29.

Defendants Louis Vuitton USA, Inc., Louis Vuitton Malletier, and Off-White Operating SRL are corporate members[3] of the non-party French global conglomerate LVMH Moët Hennessy Louis Vuitton, Inc.  *Id.* ¶¶ 5-8.  "LVMH is a multinational corporation and conglomerate, specializing in the development, marketing, and sale of luxury brands and goods" including fashion, cosmetics, fragrances, beverages, jewelry, and watches.[4]

---

[1] Plaintiffs' second amended complaint is the operative pleading from which we draw these facts.  DI 46.

[2] DI 46 ¶¶ 4, 19.  We refer to Ms. Hian and PHC together as "plaintiffs."

[3] We refer to the defendants together as "LVMH."

[4] *Id.* ¶¶ 24-25.  Fashion-minded readers may be familiar with some of LVMH's brands, which include Louis Vuitton, Christian Dior, Fendi, Givenchy, FENTY, Tiffany & Co., and more.  *Id.* ¶ 25.

The dispute began with an e-mail. PHC's vice president, Ms. Rosemary Brahin, e-mailed Mr. Nicolas Bazire at his LVMH e-mail address in February of 2020 to introduce him to plaintiffs and their designs. *Id.* ¶ 35. Mr. Bazire is the "head of [d]evelopment and [a]quisitions at LVMH," a member of the LVMH board of directors, and a member of the LVMH executive committee. *Id.* ¶ 36. He has access to all divisions, groups, owned companies, brands, and/or teams within the LVMH conglomerate, including its designers and stylists. *Id.* It was precisely because of Mr. Bazire's powerful position at LVMH that Ms. Brahin e-mailed him on behalf of plaintiffs. *Id.* ¶ 35. She attached to her introductory e-mail a press release about Ms. Hian, Ms. Hian's fall 2019 lookbook, Ms. Hian's spring/summer 2019 lookbook, and a promotional video. *Id.* After following up with Mr. Bazire and his assistant several times via e-mail and phone, Ms. Brahin learned that her e-mail correspondence and attachments had been "given to [Mr.] Bazire's attention" and had been printed and placed on his desk. *Id.* ¶¶ 39, 44. Ms. Brahin was encouraged to "keep following up and seeking" a future meeting with Mr. Bazire, who was too busy to meet at that time. *Id.*

Ms. Brahin and plaintiffs never heard back from Mr. Bazire, but approximately two years later, Ms. Hian observed that "LVMH was marketing its brand, apparel, and accessories using [plaintiffs'] original designs, materials, intellectual property, and copyrights, without [their] permission, without attribution, and without payment therefore." *Id.* ¶¶ 35-45, 57. Specifically, plaintiffs allege that LVMH accessed and then copied three of their designs: "Plaque D'egout," "Ombre," and "Green Raffia." *Id.* ¶¶ 30-32, 48-50. LVMH accessed the Ombre design directly through the materials that Ms. Brahin sent to Mr. Bazire and which were printed and placed on his desk. *Id.* ¶ 49. And LVMH accessed the Green Raffia and Plaque D'egout designs by further investigating plaintiffs and their designs on the internet after the Ombre design came to

its attention.  *Id.* ¶¶ 48, 50.  Further, LVMH had access to plaintiffs' designs through the textile manufacturers they share in France, where it is common practice for textile manufacturers to show luxury brands the other designs they are producing.  *Id.* ¶¶ 54-55.

Plaintiffs' second amended complaint features images comparing their original designs on the left to LVMH's allegedly infringing designs on the right.  *See id.* ¶ 58.  We include these images below.

a)  Plaque D'egout



Paula Hian                          LVMH




Paula Hian                          LVMH

4

b) Ombre



**Paula Hian**          **LVMH**

c) Green Raffia



**Paula Hian**          **LVMH**

LVMH also created "products and marketing concepts that combin[e] elements . . . of [plaintiffs'] original designs, materials, intellectual property, and copyrights." *Id.* ¶ 61. Plaintiffs include images of these allegedly infringing designs too, shown below.

5



















DI 46 ¶¶ 63 – 72.

Plaintiffs demanded that LVMH cease and desist the alleged infringement, but LVMH refused.  DI 46 ¶ 59.  So plaintiffs brought this litigation, asserting copyright infringement claims pursuant to the Copyright Act (Counts I and II), claims under the Lanham Act and state unfair competition laws (Count III), and a claim for unjust enrichment/quantum merit (Count IV).  *See generally* DI 46.

**II.    LVMH's Motion to Dismiss**

LVMH moved to dismiss an earlier version of plaintiffs' complaint.  DI 30 (moving to dismiss plaintiffs' first amended complaint (DI 7)).  Plaintiffs filed a brief in opposition (DI 38) and LVMH filed a brief in reply (DI 39).  We heard oral argument on May 20, 2024, during which plaintiffs requested to amend their complaint once more.  DI 44.  We permitted (DI 43) them to file a proposed second amended complaint (DI 46) which we now accept as the operative pleading.  The parties filed supplemental briefs in light of the new allegations that appear in plaintiffs' second amended complaint.  DI 49, 50.  LVMH's motion to dismiss is thus ripe for disposition.

In its motion and supplemental briefing, LVMH argues that plaintiffs have not stated copyright infringement claims with respect to any of the asserted designs because 1) they do not allege a registered copyright for Green Raffia; 2) they have not plausibly alleged that LVMH had access to the designs; and 3) the accused designs are not substantially similar to the Ombre or Plaque D'egout designs as a matter of law.  *See generally* DI 30-2.  Next, they argue that plaintiffs' claims for unfair competition under the Lanham Act and Pennsylvania state law are not viable because they have not pled the existence of a protectable mark and because the Copyright Act preempts state unfair competition claims.  *Id.*  Finally, they argue that we must

dismiss plaintiffs' unjust enrichment claim because it is preempted by the Copyright Act and is otherwise insufficiently stated. *Id.*

Plaintiffs argue in response that we should not dismiss their copyright infringement claims because they have plausibly pled access and substantial similarity. *See generally* DI 38. Next, they argue that they have pled protectable works for purposes of their Lanham Act and state unfair competition claims, and we should not consider their state claims preempted by the Copyright Act because they serve as alternative theories of recovery. *Id.* Similarly, plaintiffs argue that their unjust enrichment claim is sufficiently stated and not preempted because it too serves as an alternate theory of recovery. *Id.*

We agree that plaintiffs have pled a copyright infringement claim on their Plaque D'egout design sufficient to withstand LVMH's motion to dismiss. But we dismiss the rest of their claims for the reasons that follow.

### III.   Standard of Review

We analyze LVMH's motion to dismiss under the familiar Rule 12(b)(6) standard. To survive the motion, plaintiffs' second amended complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). Deciding whether a complaint is facially plausible is "context specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 556 U.S. at 663-64.

IV.    <u>**Analysis**</u>

    **a.  Plaintiffs plausibly plead copyright infringement claims regarding Plaque D'egout, but not their other designs.**

To state a claim for copyright infringement under the Copyright Act, a plaintiff must show "(1) ownership of a valid copyright; and (2) unauthorized copying of . . . the plaintiff's work." *Tanksley v. Daniels*, 902 F.3d 165, 173 (3d Cir. 2018).

    i.   <u>Plaintiffs do not state a viable claim for copyright infringement with respect to Green Raffia because they do not plead a registered copyright.</u>

Plaintiffs do not plead that they hold or have applied for a registered copyright for their Green Raffia design.  DI 46 ¶¶ 73-33.  Therefore, they cannot maintain a claim for infringement under the Copyright Act for that design.  17 U.S.C. § 411(a)); *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 302 (2019); *Dawes-Lloyd v. Publish Am., LLLP*, 441 F. App'x 956, 957 (3d Cir. 2011); *see also Browne v. Zaslow*, 103 F. Supp. 3d 666, 672 (E.D. Pa. 2015).  But plaintiffs do plead that they hold registered copyrights for Plaque D'egout and Ombre, so our analysis moves forward with respect to those designs.  DI 46 ¶¶ 74-77.

    ii.   <u>Plaintiffs plausibly plead that LVMH had access to their Plaque D'egout and Ombre designs.</u>

The second element of a copyright infringement claim requires unauthorized copying. *Tanksley*, 902 F.3d at 173.  At the pleadings stage, a plaintiff must plausibly allege that the defendant "did, in fact, use the copyrighted work in creating [their] own." *Id.*  Where, as here, a plaintiff lacks direct evidence of actual copying, they may allege "circumstantial evidence of access [to the copyrighted work]." *Id.*  Courts describe access as "a reasonable opportunity" or a "reasonable possibility" to review and copy a copyrighted work. *Cottrill v. Spears*, 2003 WL 21223846, at *5 (E.D. Pa. May 22, 2003) (collecting cases), *aff'd*, 87 F. App'x 803 (3d Cir. 2004), *as amended on reh'g* (June 2, 2004).  It can be shown by a "particular chain of events or link by which the alleged infringer might have gained access to the work" including "showing

the existence of a channel of communication between the person the plaintiff submitted [their] work to and the person . . . who ultimately created [d]efendant's work." *Id.* (cleaned up).  For example, "access . . . may be established by showing that the third party had possession of plaintiff's work and had concurrent dealings with both plaintiff and defendant." *Id.*

LVMH argues that plaintiffs have not pled access to Ombre and Plaque D'egout.  Not so. First, plaintiffs state that Ms. Brahin e-mailed their Ombre design to Mr. Bazire, a top executive within the LVMH conglomerate who had "access to all divisions, groups, owned companies, brands, and/or teams within LVMH and including . . . any and all designers and stylists."  DI 46 ¶¶ 35-36.  His assistant also physically printed the e-mail and its attachments, including the Ombre design, and placed it on his desk.  *Id.* ¶¶ 39, 44.  And plaintiffs allege that he or his assistant forwarded the designs to "designers and stylists at LVMH responsible for the development of the infringing products."  *Id.* ¶ 51.  This plausibly establishes a "channel of communication" between Mr. Bazire and the designers responsible for the allegedly infringing LVMH designs, and that the Ombre design travelled through that channel.  *Cottrill*, 2003 WL 21223846, at *5-6.

Plaque D'egout is a closer case because it was not included in the e-mail to Mr. Bazire. But plaintiffs allege that someone at LVMH looked up plaintiffs on the internet after plaintiffs' work was brought to LVMH's attention, found their Plaque D'egout design, and copied it.  *Id.* ¶ 46.  LVMH argues that this amounts to mere conjecture and thus does not support an inference of access, but for purposes of a motion to dismiss, we disagree.  DI 49 at 2 (ECF).  We needn't check our common sense at the door when evaluating a complaint.  Consider *Digital Dream Labs, Inc. v. Living Tech. (Shenzhen) Co.*, 2022 WL 4534743 (W.D. Pa. Sept. 28, 2022).  In that case, the court inferred access to model robot A where defendant was seen in possession of

model robot B because model robots A and B were sold alongside each other at a certain

liquidation sale. *Id.* at *3. The court reasoned that because defendant had possession of model

robot B, it also had "reasonable opportunity" to obtain model robot A, even though it was never

seen in possession of model robot A. *Id.* at *3. Similar to *Digital Dream Labs*, a top executive

at LVMH and his assistant possessed plaintiffs' Ombre design and other promotional materials,

and it follows that they or other designers at LVMH were familiar with and had a "reasonable

opportunity" to investigate plaintiffs and their work further. 2022 WL 4534743, at *3; *see also*

*Cottrill*, 2003 WL 21223846, at *5. Such an investigation is highly plausible in light of

plaintiffs' self-promotion to LVMH, and is not just conjecture — it is a very reasonable (if not

the most reasonable) inference one can draw from the alleged facts. DI 46 ¶¶ 35-36. We think

this "chain of events" by which LVMH "might have gained access to [plaintiffs'] work"

sufficient to establish access. *Cottrill*, 2003 WL 21223846, at *5.

Further, courts recognize access to copyrighted works through a third party where the

third party had possession of the work at issue and concurrent dealings with both the plaintiff and

defendant. *See, e.g.*, *Walker v. Kemp*, 587 F. Supp. 3d 232, 241 (E.D. Pa. 2022); *Cottrill*, 2003

WL 21223846, at *5. Where such concurrent dealings "overlap[ped] in subject matter," there is

an inference of access. *Hofmann v. Pressman Toy Corp.*, 790 F. Supp. 498, 507 (D.N.J. 1990).

So too here. Even if plaintiffs' e-mail to Mr. Bazire and LVMH's subsequent internet

investigation did not establish LVMH's access, plaintiffs plead access through their allegations

that they and LVMH use the same textile manufacturers in France. DI 46 ¶¶ 54-56. This

establishes an inference of access to plaintiffs' designs, especially because plaintiffs allege that it

is common for French textile manufacturers to show off designers' works to other designers. DI

46 ¶¶ 54-56.

For these reasons, we think plaintiffs have sufficiently pleaded that LVMH had access to their Ombre and Plaque D'egout designs.

### iii.   Plaintiffs plausibly pleads substantial similarity for Plaque D'egout, but not for Ombre.

Access alone does not state a copyright infringement claim. *Tanksley*, 902 F.3d at 174. Unauthorized copying also requires "material appropriation" of the copyrighted work, shown by "substantial similarity" between it and the accused design. *Id.*  Two works are substantially similar when compared side by side, an ordinary observer "unless [they] set out to detect disparities in the two works, would be disposed to overlook them and regard their aesthetic appeal as the same." *Id.* (cleaned up).  Testing for substantial similarity is a fact intensive inquiry. *Grondin v. Fanatics, Inc.*, 2023 WL 144284, at *3 (E.D. Pa. Jan. 10, 2023) (citing *Tanksley*, 902 F.3d at 168).  While we may consider things like "total concept and overall feel" when comparing works for substantial similarity, "the basic inquiry remains whether an ordinary observer would perceive that the defendant has copied protected elements of the plaintiff's work." *Tanksley*, 902 F.3d at 175, 177.

We first consider Plaque D'egout.  It looks like what one might describe as an irregularly warped black-and-white checkerboard pattern.  DI 46 ¶ 58(a).  And then we consider the LVMH designs accused of infringing Plaque D'egout.  DI 30-2 at 24 (ECF) (a helpfully organized image from LVMH's brief drawn from plaintiffs' second amended complaint).  Below, Plaque D'egout is shown on top, and the collage of LVMH designs is shown underneath.





We think that a lay observer might not readily find aesthetic differences between Plaque D'egout and some of the accused LVMH designs. *Tanksley*, 902 F.3d at 174. For example, accused designs F, G, H, I, K, and L share a number of aesthetic details in common with Plaque D'egout, including a warped black and white checkerboard pattern with similarly sized boxes. LVMH argues that the distortions on their checkerboard designs are very different from those on Plaque D'egout based on the shape and size of the squares in each. DI 30-1 at 25 (ECF). Those may be significant contrasts, but we don't think that this is necessarily the kind of thing that a lay observer who has not set out to scour the images for differences would notice. *Tanksley*, 902 F.3d at 174. And the overall aesthetic feel and total concept of the designs is rather similar. *Id.* at 177. At this stage, we do not see a basis to dismiss the Plaque D'egout claim because of a lack of substantial similarity, so plaintiffs' copyright infringement claims on these designs withstand LVMH's motion to dismiss.[5]

However, we must agree with LVMH that accused designs J and M are not substantially similar to Plaque D'egout as a matter of law because there are stark differences between the designs that would be obvious to even a lay observer who has not set out to look for disparities. Accused design J looks nothing like Plaque D'egout in size, shape, color, or overall aesthetic feel. And accused design M does feature a warped checkerboard design but has an overall aesthetic feel different from Plaque D'egout owing to its different color scheme. Plaintiffs have not stated a claim of copyright infringement with respect to designs J and M.

---

[5] LVMH argues that the checkboard design is commonplace, and that ought to color our analysis. Maybe so, but not at the pleadings stage.

Next, we consider Ombre, which involves a transition from one color to another.  DI 46 ¶ 58(b).  We compare those designs to the LVMH designs accused of infringing.  DI 30-2 at 20 (ECF) (collage of designs drawn from the allegations).  Below, Ombre is shown first, followed by the accused designs:



Unlike the situation with Plaque D'egout, none of the LVMH accused designs look remotely similar to Ombre.  We are sensitive to the factual nature of substantial similarity, but this is not even close.  Ombre features horizontal transitions of color broken up by jagged lines with clearly defined edges.  DI 46 ¶ 58(b).  In contrast, the accused designs feature softly blended color transitions in various directions.  And accused design D has no color transition at all.  Though some of the accused designs sport color schemes similar to the Ombre design, "random similarities are insufficient to establish substantial similarity."  *Tanksley*, 902 F.3d at 177.  Because the overall aesthetic feel and total concept of the designs is markedly different, plaintiffs have not shown substantial similarity and thus cannot maintain copyright infringement claims with respect to Ombre.

> **b.   Plaintiffs do not plausibly plead Lanham Act or state law unfair competition claims, and their state claims are preempted by the Copyright Act.**

Plaintiffs' second amended complaint includes a count for "violations of common law and Federal Lanham Act and state unfair competition laws."  DI 46 ¶¶ 90-99.  LVMH argues that none are viable as a matter of law first because plaintiffs do not allege any protected marks and second because the Copyright Act preempts the state unfair competition claims.  DI 30-2.  We agree.

The Lanham Act prohibits "false association" and "false advertising" under 17 U.S.C. § 1125.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014).  Everyone agrees that plaintiffs second amended complaint advances a false association claim under § 1125(a)(1)(A), which prohibits false or misleading claims "likely to cause confusion" about the origin of goods among consumers.  *See* DI 46 ¶ 93; DI 30-2 at 27 (ECF); DI 38 at 14 (ECF).  To state such a claim, plaintiffs "must demonstrate that (1) [they have] a valid and legally protectable mark; (2) [they] own[] the mark; and (3) the defendant's use of the mark to

identify goods or services causes a likelihood of confusion." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) (citing *Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 437 (3d Cir. 2000)).  And Pennsylvania's common law unfair competition cause of action, together with the equivalent statutory cause of action (under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1 *et seq.*, ("UTPCPL")) require the exact same elements.  *See e.g., R.J. Ants, Inc. v. Marinelli Enterprises, LLC*, 771 F. Supp. 2d 475, 489 (E.D. Pa. 2011) ("A Pennsylvania common law cause for unfair competition is identical to the Lanham Act, without the federal requirement of interstate commerce."); *Douglas v. Osteen*, 560 F. Supp. 2d 362, 370 (E.D. Pa. 2008) ("Because the elements of claims brought under § 1125(a) and the UTPCPL are so similar, the same legal standards apply.").

But here, plaintiffs do not successfully plead that their designs are legally protectable marks, i.e., registered trademarks or marks that the public recognizes as identifying goods as those of Ms. Hian or PHC.  *Berner Int'l Corp. v. Mars Sales Co.*, 987 F.2d 975, 979 (3d Cir. 1993).  For example, they don't allege that they were the first to adopt any of their designs as marks in commerce, that they have used the designs in commerce since their adoption, or that their designs are inherently distinctive or have acquired secondary meaning[6] to the public.

---

[6] Plaintiffs advance no facts from which we could even draw an inference that their designs have acquired secondary meaning; the second amended complaint tells us nothing about the extent of plaintiffs' advertising or sale of the designs, public recognition of the designs as associated with plaintiffs' brand, length of use, or exclusivity of use.  *Ford Motor Co. v. Summit Motor Prods.*, 930 F.2d 277, 292 (3d Cir. 1991) (collecting cases exploring factors used to assess secondary meaning); *see also Zaslow v. Coleman*, 103 F. Supp. 3d 657, 664 (E.D. Pa. 2015) (holding that where plaintiffs do not plead facts showing that marks would "lead to immediate recognition among the general public" and similarly fail to allege "anything regarding the extent of sales and advertising, sufficient length of use, exclusivity of use, any evidence from any customer, and the size and sales of the company," they fail to plead secondary meaning).  Plaintiff offers one lone fact in support of its bid for protection of its designs as marks: the

*Douglas*, 317 F. App'x at 99 (citing *Ford Motor Co. v. Summit Motor Prods.*, 930 F.2d 277, 292

(3d Cir. 1991)).  Thus, plaintiffs cannot maintain Lanham Act false association or parallel state

unfair competition claims here.

Further, the Copyright Act preempts state claims that fall within the subject matter of

copyright and create the same rights as copyright law.  17 U.S.C. § 301(a).  To determine

whether state claims are preempted, courts apply the "extra elements test."  *Dun & Bradstreet*

*Software Servs. v. Grace Consulting, Inc.*, 307 F.3d 197, 216 (3d Cir. 2002).  Under the extra

elements test, state law causes of action that incorporate elements beyond those necessary to

prove copyright infringement, and "regulate conduct qualitatively different from the conduct

governed by copyright law" are not preempted by the Copyright Act.  *Grace Consulting, Inc.*,

307 F.3d at 217.

Plaintiffs here rest their state unfair competition claims on allegations that LVMH "co-

opted [their] designs for use in their own marketing materials and fashion, clothing, and apparel

designs."  DI 38 at 7 (ECF).  These are classic "reverse passing off" unfair competition claims.

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n.1 (2003); *Nicassio v.*

*Viacom Int'l*, 309 F. Supp. 3d 381, 397 (W.D. Pa. 2018); *Fun-Damental Too, Ltd. v. Universal*

*Music Grp., Inc.*, 1997 WL 381608, at *4 (E.D. Pa. July 8, 1997).  Reverse passing off unfair

competition claims pertaining to copyrightable works are preempted by the Copyright Act

because they are grounded in the "alleged unauthorized copying and use of another's

copyrighted expression" and thus fail the extra element test.  *Fun-Damental Too*, 1997 WL

381608, at *5 (E.D. Pa. July 8, 1997*); see also Brand Design Co. v. Rite Aid Corp.*, 623 F. Supp.

---

designs generate "consumer good will."  DI 38 at 14 (ECF); DI 46 ¶ 91.  This is insufficient to
show that the primary significance of the designs is to identify the source of the products on
which they appear.  *Summit Motor Prods.*, 930 F.2d at 292.

3d 526, 535 (E.D. Pa. 2022) ("[r]everse passing off claims concerning works that are the subject of copyright are preempted by the Copyright Act"); *Schiffer Publ'g, Ltd. v. Chronicle Books, LLC*, 350 F. Supp. 2d 613, 620 (E.D. Pa. 2004) (similar). Therefore, plaintiffs state-law claims of unfair competition are preempted by the Copyright Act.[7]

### c.  Plaintiffs' claim for unjust enrichment/quantum merit is preempted by the Copyright Act.

Finally, plaintiffs' second amended complaint alleges a claim for unjust enrichment/quantum merit.[8]  DI 46 ¶¶ 100-02.  LVMH argues[9] that, like the state-law unfair competition claims, it is preempted by the Copyright Act.  DI 30-2 at 32 (ECF).  We agree.

Plaintiffs unjust enrichment claim rests on allegations that LVMH unjustly earned profits by using plaintiffs' designs in its advertising, marketing, branding, and products.  DI 46 ¶ 101. Plaintiffs' unjust enrichment claim thus seeks compensation for LVMH "having profited from

---

[7] Plaintiffs argue that their state-law unfair competition claims pertaining to Green Raffia should not be preempted by the Copyright Act because it is not copyrighted.  DI 38 at 14 (ECF). That is an incorrect statement of law.  Works that are copyrightable, even if not actually registered, are still within the subject matter of the Copyright Act for purposes of preemption. *Bath Auth., LLC v. Anzzi LLC*, 2018 WL 5112889, at *6 n.4 (E.D. Pa. Oct. 19, 2018); *Scranton Times, L.P. v. Wilkes-Barre Pub. Co.*, 2009 WL 3100963, at *7 (M.D. Pa. Sept. 23, 2009). Similarly, plaintiffs argue that their state-law unfair competition claims should be permitted as alternative theories of recovery where they have failed to plead copyright infringement claims. DI 38 at 14 (ECF).  But a plaintiff's state-law unfair competition claim is not saved from preemption by virtue of the plaintiff's failure to adequately plead a copyright claim on a work. *See e.g., Nicassio*, 309 F. Supp. 3d at 396.

[8] Unjust enrichment and quantum merit claims are one and the same under Pennsylvania law. *Church & Murdock Elec., Inc. v. Reonac Energy Sys.*, 2016 WL 880548, at *3 n.1 (W.D. Pa. Mar. 1, 2016) (collecting cases); *Visual Communs., Inc. v. Assurex Health, Inc.*, 2014 WL 4662474, at *8 (E.D. Pa. Sept. 18, 2014); *Fyk v. Roth*, 1995 WL 290444, at *2 n.4 (E.D. Pa. May 9, 1995).

[9] LVMH also argues that plaintiffs do not allege that they conferred a benefit on LVMH, as is required for an unjust enrichment claim.  DI 30-2 at 34 (ECF).  We need not address this argument here because plaintiffs' unjust enrichment claim is preempted by the Copyright Act.

the use of [their] [designs] and thus seeks to protect the same rights as those protected by the

Copyright Act." *Visual Commons., Inc.*, 2014 WL 4662474, at *9 (E.D. Pa. Sept. 18, 2014).

This being the case, the unjust enrichment claim fails the extra element test and is preempted by

the Copyright Act. *Grace Consulting, Inc.*, 307 F.3d at 217; *see also Harris v. Winfrey*, 2011

U.S. Dist. LEXIS 28869, at *12 (E.D. Pa. Mar. 18, 2011) (unjust enrichment claim preempted by

Copyright Act where "[p]laintiffs' claims for . . . unjust enrichment do not require proof of an

extra element beyond 'mere copying,' and are substantively indistinguishable from plaintiffs'

claim for copyright infringement").[10]

## V.   Conclusion

For the above reasons, LVMH's motion to dismiss is granted in part and denied in part.

We dismiss all of plaintiffs' claims with prejudice, except for their claims that LVMH's accused

designs F, G, H, I, K, and L infringe the copyright on Plaque D'egout.

---

[10] As with their Lanham Act and state unfair competition claims, plaintiffs argue that they should be permitted to plead a claim for unjust enrichment as an alternate theory of liability where their copyright infringement claims fail.  DI 38 at 15 (ECF).  As discussed above, a plaintiff's failure to adequately plead ownership of a copyright or copyright infringement does not save their unjust enrichment claim from preemption by the Copyright Act where the work at issue is copyrightable.  *See supra* n.7.